The Honorable Brian A. Tsuchida

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

| | |
|---|---|
| JOSHUA WALZ, individually and on behalf of all those similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>WALMART INC., a Foreign Profit Corporation; DELIVERY DRIVERS INC., a Foreign Profit Corporation; and ASHLEY HATFIELD, individually and her marital community, if any,<br><br>        Defendants. | Case No. 3:23-cv-06083-BAT<br><br>**DEFENDANTS WALMART INC. AND ASHLEY HATFIELD'S MOTION TO COMPEL ARBITRATION**<br><br>NOTE ON MOTION CALENDAR: January 12, 2024<br><br>Without Oral Argument |

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

## TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 2

    A.   The Spark Driver App.............................................................................. 2

    B.   The Parties. ............................................................................................. 2

    C.   The Agreement......................................................................................... 3

III. PROCEDURAL HISTORY ................................................................................. 4

IV.  THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS......... 5

    A.   The Agreement Is Governed By The FAA, Which Favors Arbitration................. 5

    B.   The FAA Does Not Exempt Plaintiff from Arbitration. ......................................... 6

    C.   Plaintiff's Claims All Fall Within The Scope Of The Agreement.......................... 9

        1.   Plaintiff's Individual Claims Are Arbitrable. .............................................. 9

        2.   Plaintiff Waived Participation in Any Putative Class Action................... 10

        3.   Any Question About the Scope of the Agreement to Arbitrate Must Be Decided by an Arbitrator. ......................................................................... 11

    D.   The Arbitration Agreement Is Valid And Enforceable........................................ 12

        1.   The Agreement Is Not Procedurally Unconscionable. ............................ 13

        2.   The Agreement Is Not Substantively Unconscionable. ........................... 15

V.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED OR, AT A MINIMUM, STAYED PENDING COMPLETION OF THE ARBITRATION ................................. 16

VI.  CONCLUSION.................................................................................................. 17

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - i
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adler v. Fred Lind Manor*, 153 Wash. 2d 331 (2004) ........................................................ 14, 15

5

*Allied-Bruce Terminiz Cos. v. Dobson*,
    513 U.S. 265 (1995) ........................................................................................................ 5

6

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ..................................................................................................... 2, 5

7

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ........................................................................................................ 2

8

*AT&T Techs., Inc. v. Commc'n Workers of Am.*,
    475 U.S. 643 (1986) ........................................................................................................ 9

9

10

*Bishop v. Boral Indus.*,
    2020 U.S. Dist. LEXIS 141171 (S.D. Cal. Aug. 6, 2020) ............................................. 16

11

*Blanchat v. Smash Franchise Partners, LLC*,
    No. 2:20-cv-0380-TOR, 2020 WL 7364978 (E.D. Wash. Dec. 15, 2020) ............................. 16

12

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ........................................................................................ 5

13

14

*Burgess v. Buddy's Northwest LLC*,
    No. C15-5785 BHS, 2016 WL 7387099 (W.D. Wash. Dec. 21, 2016) ......................... 3

15

*Capriole v. Uber Techs., Inc.*,
    7 F.4th 854 (9th Cir. 2021) ....................................................................................... 8, 10

16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ........................................................................................ 9

17

18

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ........................................................................................................ 5

19

*Coppock v. Citigroup, Inc.*,
    2013 WL 1192632 (W.D. Wash. Mar. 22, 2013) ........................................................ 6

20

21

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ...................................................................................................... 12

22

*Fli-Lo Falcon, LLC. v. Amazon.com Inc.*,
    No. C22-441-RSM-MLP, 2022 WL 4451273 (W.D. Wash. Sept. 8, 2022) ............................. 5

23

*Forrest v. Spizzirri*,
    62 F.4th 1201 (9th Cir. 2023) ...................................................................................... 16

24

25

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000) .......................................................................................................... 6

26

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - ii
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)........................................................................................ 12

*Hoober v. Movement Mortg., Inc.*,
   382 F. Supp. 3d 1148 (W.D. Wash. 2019)......................................... 13, 14, 17

*Immediato v. Postmates, Inc.*,
   54 F.4th 67 (1st Cir. 2022).......................................................................... 9, 10

*Knapke v. PeopleConnect, Inc.*,
   38 F.4th 824 (9th Cir. 2022) ............................................................................ 3

*Lowden v. T-Mobile, USA, Inc.*,
   No. C05-1482P, 2006 WL 1009279 (W.D. Wash Apr. 13, 2006) ..................... 15

*Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*,
   652 F. Supp. 3d 1313 (W.D. Wash. 2013)..................................................... 9, 12

*Martinez v. Leslie's Poolmart, Inc.*,
   No. 8:14-CV-01481-CAS, 2014 WL 5604974 (C.D. Cal. Nov. 3, 2014) ................ 5

*McKee v. AT&T Corp.*,
   164 Wash. 2d 372 (2008) .......................................................................... 12, 13

*McMahon v. Meta Platforms, Inc.*,
   No. 2:23-cv-00171-RSL, 2023 WL 4546377 (W.D. Wash. July 14, 2023) ....................... 13, 16

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) .................................................................. 13, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................................................. 9

*Mundi v. Union Sec. Life Insur. Co.*,
   555 F.3d 1042 (9th Cir. 2009) ........................................................................ 12

*Nelson v. McGoldrick*,
   127 Wash. 2d 124 (Wash. 1995)................................................................. 13, 17

*Oakley v. Domino's Pizza, LLC*,
   23 Wash. App. 2d 218 (2022) ....................................................................... 7, 8

*Randall v. FedEx Ground Package Sys., Inc.*,
   No. 2:23-cv-0095-TOR, 2023 WL 4632380 (E.D. Wash. July 19, 2023).......................... 16

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) ....................................... 12

*Rittman v. Amazon.com, Inc.*,
   971 F.3d 904 (9th Cir. 2020) .......................................................................... 8

*Romney v. Franciscan Med. Grp.*,
   186 Wash. App. 728 (2015)......................................................................... 3, 13

*Shelton v. Delivery Drivers, Inc.*,
   8:22-cv-02135-DOC, 2023 WL 2629027 (C.D. Cal. Jan. 31, 2023)................ 6, 8, 13

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - iii
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ................................................................................. 5

*Southwest Airlines Co. v. Saxon*,
   596 U.S. 450 (2022) ............................................................................................... 8

*Sparling v. Hoffman Constr. Co., Inc.*,
   864 F.2d 635 (9th Cir. 1988) ................................................................................. 16

*Sweitzer v. JRK Residential Grp., Inc.*,
   No. 20-5849 RJB, 2020 WL 6147014 (W.D. Wash. Oct. 20, 2020) ....................... 15

*Thompson v. La Petite Acad., Inc.*,
   No. 2:22-cv-04348-AB-JPR, 2023 WL 4317193 (C.D. Cal. Apr. 28, 2023) ........... 16

*Wallace v. Grubhub Holdings, Inc.*,
   970 F.3d 798 (7th Cir. 2020) ................................................................................. 8

*Washington Cities Ins. Auths. v. Ironshore Idem., Inc.*,
   443 F. Supp. 3d 1218 (W.D. Wash. 2020) ............................................................. 6

*Zuver v. Airtouch Commc'ns, Inc.*,
   153 Wash. 2d 293 (2004) ................................................................................. 13, 15

**Statutes**

9 U.S.C. § 2 ................................................................................................................. 1, 12

9 U.S.C. § 3 ................................................................................................................. 17

9 U.S.C. §§ 1-16 ......................................................................................................... 4

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - iv
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

1  ## I.   __INTRODUCTION__

2       Plaintiff Joshua Walz ("Plaintiff") and Defendant Walmart Inc. ("Walmart") entered into

3  a Non-Disclosure and Dispute Resolution Agreement on June 24, 2021 (the "Original

4  Agreement"), and Plaintiff subsequently acknowledged an updated version of that agreement on

5  December 24, 2022 (the "Updated Agreement") (collectively, the "Agreement").[1]  The Agreement

6  requires Plaintiff to arbitrate "all disputes on an individual basis in final and binding arbitration"

7  relating to the services Plaintiff provided as an independent contractor using the "Spark Driver"

8  platform.  *See* Declaration of Ashley O'Brien ("O'Brien Decl."), Ex. A at 1; *id.*, Ex. B at 1.  The

9  Spark Driver platform is an "app-based delivery platform that allows independent contractors to

10  receive opportunities to deliver grocery and other general merchandise from [Walmart] stores to

11  customers' homes."  (O'Brien Decl., ¶ 3.)  The Agreement expressly applies not just to disputes

12  between Plaintiff and Walmart, but also to disputes brought by Plaintiff against any of Walmart's

13  "agents, employees, affiliates, successors, assigns, or subsidiaries."  (O'Brien Decl., Ex. A at 10;

14  *id.*, Ex. B at 9.)  Plaintiff failed to adhere to the Agreement by filing a putative class action against

15  Walmart, in addition to two other defendants—Delivery Drivers Inc. ("DDI"), an entity that

16  Plaintiff described as "contract[ing] with . . . Walmart to perform delivery services," and Ashley

17  Hatfield ("Hatfield"), a Walmart employee (collectively with Walmart, "Defendants") — in

18  Washington state court.  (*See* Dkt. #1-1, Ex. A ¶¶ 4.4, 3.3.)  Defendant Walmart then removed this

19  action to this court pursuant to the Class Action Fairness Act.  (Dkt. #1.)  Plaintiff's claims against

20  Defendants must now be compelled to arbitration on an individual basis.

21       The Federal Arbitration Act ("FAA") mandates that all arbitration agreements "shall be

22  valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

23  revocation of any contract . . . ."  9 U.S.C. § 2.  The United States Supreme Court has consistently

24  interpreted the FAA to favor the enforceability of arbitration agreements and has instructed that

25

26  [1] The relevant provisions of the Original Agreement and Updated Agreement are identical.  (*See generally* O'Brien Decl., Ex. A; *id.*, Ex. B.)  As such, Walmart will cite the relevant sections of both agreements, when applicable, and refer to the agreements as one singular "Agreement."

1  "[c]ourts must 'rigorously enforce' arbitration agreements according to their terms . . . ."  *Am.*

2  *Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted); *see also AT&T*

3  *Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (holding that arbitration agreements are

4  "'valid, irrevocable, and enforceable' as written") (citation omitted).  Because the parties have

5  entered into a valid, binding arbitration agreement, which unquestionably covers this action,

6  Plaintiff's individual claims against Defendants should be compelled to arbitration.  (*See generally*

7  O'Brien Decl., Ex. A; *id.*, Ex. B.)  The Court also should dismiss the putative class claims brought

8  by Plaintiff as likewise violative of the Agreement's terms and, as permitted by applicable law,

9  dismiss the action with prejudice.

10  **II.     FACTUAL BACKGROUND**

11       **A.      The Spark Driver App.**

12       The "Spark App" is "an app-based delivery platform that allows independent contractor

13  drivers to receive opportunities to deliver grocery and other general merchandise from stores to

14  nearby customers' homes."  (O'Brien Decl., ¶ 3.)

15       **B.      The Parties.**

16       Plaintiff is a former independent contractor, who contracted to provide delivery services

17  using Walmart's Spark Driver platform.  Upon joining the Spark Driver platform, on June 24,

18  2021, Plaintiff signed the Original Agreement.  (O'Brien Decl., ¶ 5, Ex. A.)  Subsequently, on

19  December 24, 2022, Plaintiff acknowledged the Updated Agreement.[2]  (*Id.*, ¶ 11, Ex. B.)  Both the

20  Original and Updated Agreement provided a mechanism to opt out of the arbitration provisions,

21  but Plaintiff chose not to do so.  (*See id.* ¶6, Ex. A, Ex. B.)

22       Walmart is a corporation incorporated in the State of Delaware with its principal place of

23  business in Bentonville, Arkansas.  (O'Brien Decl. ¶ 2.)

24

25

26  ---
[2]  Drivers who agreed to the Updated Agreement were asked to acknowledge it, and the date and time of their acknowledgement was recorded.  (O'Brien Decl., ¶¶ 11–12.)  Plaintiff acknowledged the Updated Agreement on December 24, 2022.  (*Id.*, ¶¶ 11–12, Ex. C.)

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - 2
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

1    According to Plaintiff, DDI is based in Irvine, California, and provides delivery services

2    and serves customers throughout Washington, including in Pierce County.  (Dkt. #1-1, Ex. A

3    ¶ 3.2.)

4    Hatfield is a Walmart employee and works as an eCommerce Team Lead in Walmart's

5    Tumwater, Washington location.

6    **C.    The Agreement.**

7    Through the Agreement, Plaintiff and Walmart mutually agreed to resolve any and all

8    claims that either party may have against the other through arbitration[3]:

9    - The Agreement is "**intended to apply to the resolution of all disputes between the**

10    **Parties, and requires all such disputes to be resolved on an individual basis and only**

11    **by an arbitrator through final and binding arbitration and not by way of a court or**

12    **jury trial, nor a proceeding before any other governmental body, and not by way of**

13    **a class, collective, mass, or representative action or proceeding**."  (O'Brien Decl., Ex.

14    A at 5; *id.*, Ex. B at 5.)

15    - The Agreement "shall apply to **any and all disputes between the Parties regardless of**

16    **whether brought by Walmart against Contractor[4] or by Contractor against Walmart**

17    **or any of its agents, employees, affiliates, successors, assigns, or subsidiaries (each of**

18    **which are intended third party beneficiaries of this Arbitration Provision),** including

19    but not limited to: (1) **disputes arising out of or related to this Agreement**; (2) **disputes**

20    **arising out of or related to Contractor's classification as an independent contractor**;

21    (3) **disputes arising out of or related to the actual or any alleged relationship between**

22

23    [3]  DDI and Plaintiff executed a separate arbitration agreement on June 24, 2021, but regardless DDI, like Hatfield, is
24    a third-party beneficiary of the Agreement under which Defendants Walmart and Hatfield are moving here.  *See*
      O'Brien Decl., Ex. A at 10; *id.*, Ex. B at 9; *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 833 (9th Cir. 2022) ("Under
      Washington law, 'arbitration agreements may encompass nonsignatories under contract and agency principles.'")
25    (citing *Romney v. Franciscan Med. Grp.*, 186 Wash. App. 728, 349 (2015)); *see also Burgess v. Buddy's Northwest*
      *LLC*, No. C15-5785 BHS, 2016 WL 7387099, at *2 (W.D. Wash. Dec. 21, 2016) ("Under well-established
26    principles of contract law, 'nonsignatories can also seek to enforce arbitration agreements as third party
      beneficiaries.'") (citation omitted).

      [4]  "Contractor" is Plaintiff.

**Contractor and Walmart**, including termination of the relationship, whether arising under federal, state, or local law; and (4) disputes arising out of or relating to Contractor's performance of Services. This Arbitration Provision also applies, without limitation, to **disputes regarding any city, county, local, state, or federal wage-and-hour law, employment law,** trade secrets, unfair competition, **compensation, meal or rest periods,** expense reimbursement, uniform maintenance, training, termination, discrimination or harassment . . . ." (*Id.*, Ex. A at 10 (emphasis added); *id.*, Ex. B at 9 (emphasis added).)

- "The Parties expressly agree that this Arbitration Provision is **governed exclusively by the Federal Arbitration Act**, 9 U.S.C. §§ 1-16 ('FAA'), and evidences a transaction involving commerce, and Contractor agrees that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the FAA." (*Id.*, Ex. A at 5 (emphasis added); *id.*, Ex. B at 5 (emphasis added).)

- The "Arbitration Provision is not a mandatory component of this Agreement or Contractor's contractual relationship with Walmart. If Contractor does not want to be subject to this Arbitration Provision, **Contractor may opt out** . . . ." (*Id.*, Ex. A at 17 (emphasis added); *id.*, Ex. B at 15 (emphasis added).)

Accordingly, the Agreement clearly delineates the presence of an arbitration provision that, if the driver does not choose to opt out of it, mandates that "all disputes between the Parties," including third-party beneficiaries like Hatfield and DDI, be resolved in final, binding arbitration.

## III.  <u>PROCEDURAL HISTORY</u>

On October 23, 2023, despite being bound by the Agreement to arbitrate any claim relating to the services he provided as a contractor on the Spark Driver platform on an individual basis, Plaintiff sued Defendants in the Superior Court of Washington in and for the County of Pierce. (Dkt. #1-1, Ex. A.) In doing so, Plaintiff alleged Walmart misclassified him and putative class members as independent contractors rather than employees, and that Walmart failed to pay Washington state's minimum wage, tips and overtime wages; provide rest and meal periods; and

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - 4
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

1  allow for the accrual and use of paid sick leave.  (*Id.*)  On November 27, 2023, Walmart removed
2  the action to this Court.  (*See* Dkt. 1.)

3  **IV.**   **THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS.**

4      **A.**   **The Agreement Is Governed By The FAA, Which Favors Arbitration.**

5      The Agreement provides explicitly that it "is governed exclusively by the [FAA]."
6  (O'Brien Decl., Ex. A at 5; *id.*, Ex. B at 5.)  The parties' choice of the FAA to govern their
7  Agreement is enforceable according with its terms.  *See Brennan v. Opus Bank*, 796 F.3d 1125,
8  1129 (9th Cir. 2015) ("For any arbitration agreement within the coverage of the [FAA], [t]he court
9  is to make th[e] [arbitrability] determination by applying the federal substantive law of
10 arbitrability, absent clear and unmistakable evidence that the parties agreed to apply non-federal
11 arbitrability law.") (internal quotations and citations omitted); *see also Fli-Lo Falcon, LLC. v.
12 Amazon.com Inc.*, No. C22-441-RSM-MLP, 2022 WL 4451273, at *4 (W.D. Wash. Sept. 8, 2022)
13 (applying the FAA because the contested agreement "contained an unambiguous arbitration
14 provision providing for arbitration governed by the FAA"); *Martinez v. Leslie's Poolmart, Inc.*,
15 No. 8:14-CV-01481-CAS, 2014 WL 5604974, at *3, n.4 (C.D. Cal. Nov. 3, 2014) ("[T]he
16 arbitration agreement expressly provides that it is governed by the FAA . . . .  Accordingly, the
17 Court finds that the FAA applies to the arbitration agreement.").

18     "The FAA embodies a clear federal policy in favor of arbitration[,]" *Simula, Inc. v. Autoliv,
19 Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), and compels the enforcement of a written arbitration
20 agreement "evidencing a transaction involving commerce."[5]  §§ 2; *see also Am. Express Co. v.
21 Italian Colors Rest*, 570 U.S. 228, 233 (2013) (The FAA "reflects the overarching principle that
22 arbitration is a matter of contract . . . .  And consistent with [its] text, courts must rigorously enforce

---

23
24 [5]  The term "commerce," as used in section 2 of the FAA, invokes a "full exercise of constitutional power" and "signals
   an intent to exercise Congress' commerce power to the full."  *Allied-Bruce Terminiz Cos. v. Dobson*, 513 U.S. 265,
25 277 (1995).  Walmart is a national retailer incorporated in Delaware with its principal place of business based in
   Bentonville, Arkansas.  (O'Brien Decl. ¶ 2.)  Because Walmart contracted with Plaintiff, an independent contractor
26 based in Washington, the arbitration agreement involves interstate commerce.  Courts routinely hold that contracts
   between local individuals and institutions that do business in more than one state involve "commerce" within the
   meaning of the FAA.  *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (FAA applies to contract
   between local "sales counselor" and a "national retailer")

---

DEFENDANTS WALMART INC. AND                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ASHLEY HATFIELD'S MOTION TO                    1201 Third Avenue, Suite 5150 | Seattle, WA 98101
COMPEL ARBITRATION - 5                         Phone: 206.693.7057 | Fax: 206.693.7058
Case No. 3:23-cv-06083-BAT

1  arbitration agreements according to their terms.") (citation omitted). Thus, once the mere

2  existence of an arbitration agreement is established—as it has been here—"[t]he party opposing

3  arbitration bears the burden of showing that the agreement is not enforceable." *Washington Cities*

4  *Ins. Auths. v. Ironshore Idem., Inc.*, 443 F. Supp. 3d 1218, 1221 (W.D. Wash. 2020) (citing *Green*

5  *Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears

6  the burden of proving that the claims at issue are unsuitable for arbitration.")); *see also Coppock*

7  *v. Citigroup, Inc.*, No. C11-1984-JCC, 2013 WL 1192632, at *5 (W.D. Wash. Mar. 22, 2013)

8  (acknowledging that the burden of proving a claim is unsuitable for arbitration rests with the party

9  resisting arbitration).

10          **B.     The FAA Does Not Exempt Plaintiff from Arbitration.**

11          During a telephonic discussion prior to the filing of this motion, Plaintiff's counsel

12  contended that Plaintiff is not subject to the FAA because he is a "transportation worker" and

13  therefore exempt under Section 1 of the FAA. That is not so. Plaintiff's position conflicts with

14  the terms of the Agreement and applicable law.

15          First, the Agreement makes clear that Section 1 of the FAA is inapplicable here. Plaintiff

16  expressly agreed that he was not part of "any class of workers engaged in foreign or interstate

17  commerce within the meaning of Section 1 of the FAA" and that "[t]he validity, interpretation,

18  and enforcement of this Arbitration Provision [would] be governed by the FAA even if Claimant

19  and/or Walmart are otherwise exempt from the FAA." (O'Brien Decl., Ex. A at 5; *id.*, Ex. B at 5.)

20  The Agreement must therefore be enforced according to its terms.

21          Second, during the discussion over whether the transportation worker exemption applies,

22  Defendants' counsel informed Plaintiff's counsel that, earlier this year, a federal district court in

23  California had decided a case in which Walmart was a co-defendant, *Shelton v. Delivery Drivers,*

24  *Inc.*, 8:22-cv-02135-DOC, 2023 WL 2629027 (C.D. Cal. Jan. 31, 2023). The court in *Shelton,* in

25  deciding to compel arbitration, examined the facts related to the Spark Driver platform and found

26

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - 6
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

1    that the exemption did not apply, and ordered that Plaintiff's individual claims against Walmart

2    and DDI be arbitrated under the Agreement and dismissed the case.

3           For his part, Plaintiff's counsel cited *Oakley v. Domino's Pizza, LLC*, 23 Wash. App. 2d

4    218 (2022).  However, *Oakley* is factually distinguishable, and its holding is inapplicable in this

5    action.  In *Oakley*, the Washington Court of Appeals held that Domino's supply truck drivers

6    involved in the "transportation of goods from the Kent supply chain center to Domino's

7    restaurants" were exempted from the FAA because they engaged in interstate commerce.  *Id.* at

8    228.  But the facts of *Oakley* are quite different.  Unlike Walz, who used his personal automobile

9    to pick-up and deliver local customers' grocery and merchandise orders from Walmart stores

10   located in Washington to delivery locations likewise exclusively within Washington, Oakley was

11   engaged in a wholly different task.  As the court noted, "[a]s a class A driver, Oakley drove a

12   semitruck with a refrigerated trailer on a *multi-state route* that usually included deliveries to

13   Washington and Oregon and occasionally to Idaho, Montana, and Wyoming . . . .  Most class A

14   drivers 'also routinely delivered supplies across state lines.'"  *Id.* at 222 (emphasis added and

15   citations omitted).  The *Oakley* court also noted that Dominos "does not dispute that Oakley's

16   routes 'usually involved deliveries to Oregon' and that 'most of the Class A drivers operating out

17   of the Domino's Kent supply center also routinely delivered supplies across state lines.'"  *Id.* at

18   229.  Thus, the court stated, "[u]nlike an Uber driver or local taxi driver, this interstate

19   transportation appears to be a central part of the class A delivery drivers' job descriptions.  This

20   fact substantiates the conclusion that delivery drivers in Oakley's position are 'actually engaged

21   in the channels of foreign or interstate commerce.'"  *Id.*  Walz, who delivered local orders wholly

22   intrastate is much more like an Uber driver or local taxi driver than the interstate, long-haul trucker

23   in *Oakley*.

24          Moreover, in analyzing the FAA exemption, the *Oakley* court distinguished between

25   workers who transport goods which are continuing in one uninterrupted interstate journey as part

26   of a single transaction, and those goods which may travel interstate to get to a local location and

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - 7
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

1    are then purchased by customers and delivered by a driver locally in a separate transaction.  *See*

2    *id.* at 227–29.  The *Oakley* court was not alone in drawing this distinction.  *See, e.g.*, *Wallace v.*

3    *Grubhub Holdings, Inc.*, 970 F.3d 798, 801–03 (7th Cir. 2020) (rejecting argument that simply

4    "carry[ing] goods that have moved across state and even national lines" is sufficient to trigger the

5    exemption); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 863–64 (9th Cir. 2021); *Immediato v.*

6    *Postmates, Inc.*, 54 F.4th 67, 78 (1st Cir. 2022).[6]  Here, Plaintiff delivered grocery and merchandise

7    orders he obtained via the Spark Driver platform that, like food delivered from local restaurants

8    via Postmates or Grubhub, had already reached its ultimate interstate destination—a Washington-

9    based Walmart store location—and then was separately purchased by customers and delivered

10   within Washington via local, intrastate service.

11       As discussed above, earlier this year another court in this circuit analyzed this same set of

12   law and facts and recognized that the FAA exemption does not apply to drivers—like Plaintiff—

13   who are providing services on the Spark Driver platform.  *See Shelton*, 2023 WL 2629027, at *3.

14   In *Shelton* the Court held:

15       [T]he Court finds the FAA exemption inapplicable here.  Plaintiff relies on *Rittman*
16       *v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), for the proposition that FAA
         exemption applies to drivers who "complete the delivery of goods that Amazon
17       ships across state lines . . . as the last leg of a single, unbroken stream of interstate
         commerce coordinated by Amazon from origin to destination."  *Id.* at 866
18       (emphasis added).  But, unlike the "Amazon Flex drivers," Spark drivers are not
         completing the last leg of a single, unbroken trip and transaction from an out-of-
19       state manufacturer, to a fulfillment center, then to the customer who ordered the
         goods. Rather, Spark drivers transport local merchandise to local customers.
20       Accordingly, the facts of this case are more analogous to *Capriole v. Uber*
         *Technologies, Inc.*, 7 F.4th 854, 863-64 (9th Cir. 2021).  There, the Ninth Circuit
21       held that Uber drivers were not transportation workers engaged in interstate
         commerce for purposes of the FAA exemption because they primarily performed
22       "local and intrastate" services.  *Id.*  Distinguishing Uber drivers from the Amazon
         flex drivers, the Ninth Circuit explained that Uber drivers were not engaged in "a
23

24   _____
     [6]  Even the recent U.S. Supreme Court case, *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022), which found that
25   an airline ramp supervisor came within the transportation worker exception, nevertheless held that that the focus of
     the analysis must be whether the worker "play[s] a direct and 'necessary role in the free flow of goods' across
26   borders'" or is "actively 'engaged in transportation' of those good across borders via the channels of foreign or
     interstate commerce."  *Id.* at 458.  Walz's activities—making local deliveries of groceries and merchandise
     purchased by local Washington residents from Washington-based Walmart stores—clearly do not meet this
     threshold.

single, unbroken stream of interstate commerce." *Id.*; *see also Immediato v. Postmates, Inc.*, 54 F.4th 67, 79-80 (1st Cir. 2022) (couriers that performed deliveries of groceries and goods from local restaurants were not engaged in interstate commerce). Accordingly, the FAA's exemption does not apply to Plaintiff here.

*Id.* at *3. The analysis in *Shelton* is equally applicable here.

### C.   Plaintiff's Claims All Fall Within The Scope Of The Agreement.

#### 1.   Plaintiff's Individual Claims Are Arbitrable.

While the Court should not reach the issue of which claims are subject to arbitration (as explained below), as a factual matter, all of Plaintiff's individual claims fall within the scope of the Agreement.  The FAA embodies a clear policy "in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (if the court determines that "a valid agreement to arbitrate exists," and that "the agreement encompasses the dispute at issue," the court must "enforce the arbitration agreement in accordance with its terms"); *Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, 652 F. Supp. 3d 1313, 1320 (W.D. Wash. 2013) (acknowledging that if a valid agreement to arbitrate exists and the agreement "encompasses the claim at issue . . . then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms").  The broader the arbitration clause, the stronger the presumption in favor of arbitration. *See generally AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643 (1986).

Here, the scope of the Agreement is both broad and specifically encompasses Plaintiff's claims against Walmart and, based on Plaintiff's own allegations, defendants DDI and Hatfield as well.  (*See* O'Brien Decl., Ex. A at 10 (noting the Agreement applies to disputes between Plaintiff and any "**agents**, **employees**, affiliates, successors, assigns, or subsidiaries" of Walmart (emphasis added)); *id.*, Ex. B at 9; Dkt. #1-1, Ex. A ¶ 4.42 (alleging that "*Defendants* uniformly, and pursuant

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - 9
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

1    to common policy, misclassified Plaintiff and members of the putative class as independent

2    contractors when they were Defendants' employees." (emphasis added)).)

3              a.    *Plaintiff's Argument That He Was Misclassified as an Independent*
                     *Contractor Is Arbitrable.*
4

5              This action centers around Plaintiff's claim that Walmart and DDI misclassified him as an

6    independent contractor.  (*See* Dkt. #1-1, Ex. A ¶ 4.42 ("Defendants . . . misclassified Plaintiff and

7    members of the putative class as independent contractors when they were Defendants'

8    employees.").)   The Agreement plainly encompasses such claims, stating that the arbitration

9    provision "shall apply to any and all disputes between the Parties . . . including but not limited

10   to . . . disputes arising out of or related to Contractor's classification as an independent contractor .

11   . . ." (O'Brien Decl., Ex. A at 10; *id.*, Ex. B at 9.)  Because all of Plaintiff's claims are based on

12   his underlying misclassification theory, they are all subject to arbitration.

13             b.    *Plaintiff's Wage Claims Are Arbitrable.*

14             Furthermore, Plaintiff's specific wage-and-hour claims against Walmart, DDI, and

15   Hatfield—alleging that his provision of services using the Spark Driver platform violated various

16   sections of the Washington Revised Labor Code (*see* Dkt. #1-1, Ex. A.)—are likewise addressed

17   by the Agreement.   The Agreement states that the "[a]rbitration [p]rovision . . . applies, without

18   limitation, to disputes regarding any . . . state . . . wage-and-hour law, employment law . . .

19   compensation [law], meal or rest periods [law] . . . state or local statutes or regulations addressing

20   the same or similar subject matters . . . ."  (O'Brien Decl., Ex. A at 10; *id.*, Ex. B at 9.)  Thus, the

21   plain language of the Agreement requires this Court to compel Plaintiff's individual claims to

22   arbitration.

23             **2.    Plaintiff Waived Participation in Any Putative Class Action.**

24             In addition to agreeing to arbitrate his individual claims in this action, Plaintiff agreed that

25   he would arbitrate only his own claims and not the claims of others in a class or representative

26   action.  Indeed, the first page of the Agreement states in capitalized, bold-face, and underlined type

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - 10
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

1   that its arbitration provision "**REQUIRES THE PARTIES TO RESOLVE ALL DISPUTES**

2   **ON AN INDIVIDUAL BASIS**." (*Id.*, Ex. A at 1; *id.*, Ex. B at 1.)  More precisely, under the

3   bolded header "**CLASS AND REPRESENTATIVE ACTION WAIVERS**," the Agreement

4   provides, "[a]ny dispute between the Parties shall be brought in arbitration on an *individual basis*

5   *only, and not on a class, collective, mass, or representative basis*, or in any other manner that

6   sacrifices the principal advantages of individual arbitration." (*Id.*, Ex. A at 12 (emphasis added);

7   *id.*, Ex. B at 11 (emphasis added).)  The Agreement then states, under the bolded sub-header,

8   "**CLASS ACTION WAIVER**," that "*[t]he Parties expressly waive the right to have any dispute*

9   *or claim brought, heard, administered, resolved, or arbitrated as a class, collective, or mass*

10   *action*, and neither an arbitrator nor an arbitration provider shall have any authority to hear,

11   arbitrate, or administer any class, collective, and/or mass action, or to award relief to anyone but

12   the individual in arbitration ('Class Action Waiver')." (*Id.*, Ex. A at 12; *id.*, Ex. B at 11.)

13   Accordingly, this Court should enforce the Agreement's class action waiver and compel Plaintiff's

14   claims to individual arbitration.

15           **3.**     **Any Question About the Scope of the Agreement to Arbitrate Must Be**

16                      **Decided by an Arbitrator.**

17           For all of the foregoing reasons, Plaintiff's claims are covered by the Agreement and should

18   be compelled to arbitration.  But even if that were not the case, an arbitrator—not the Court—

19   should resolve any question of the scope of the claims covered.  The Agreement includes an

20   explicit delegation clause, which states that "[o]nly an arbitrator, and not any federal, state, or local

21   court or agency, shall have the exclusive authority to resolve any dispute arising out of or relating

22   to the interpretation, applicability, enforceability, or formation of [the] Arbitration Provision,

23   including without limitation any dispute concerning arbitrability." (*Id.*, Ex. A at 11; *id.*, Ex. B at

24   9–10.)  Where, as here, an arbitration agreement delegates to the arbitrator disputes about

25   arbitrability, including disputes about the existence, scope, or validity of the arbitration agreement,

26

---

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - 11
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

a court must refer the matter to arbitration, irrespective of its views on these issues.  As the Supreme Court unanimously held:

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.  That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).  "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (finding the agreement vested arbitrator with exclusive authority to resolve disputes relating to interpretation, applicability, and enforceability of the arbitration agreement); *see also Maguire Ins. Agency, Inc.*, 652 F. Supp. 3d at 1320 (following *Rent-A-Center*'s holding).  Thus, if there were any question about whether Plaintiff's claims are encompassed by the Agreement (there is not), that issue should be reserved for decision by an arbitrator—not the Court.

### D.   The Arbitration Agreement Is Valid And Enforceable.

Under the FAA, an arbitration agreement must be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("The preeminent concern of Congress in passing the [FAA] was to . . . rigorously enforce agreements to arbitrate.").  To determine whether an arbitration agreement is valid and enforceable, courts "apply general state law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."  *Mundi v. Union Sec. Life Insur. Co.*, 555 F.3d 1042, 1043 (9th Cir. 2009).  Courts may also apply "generally applicable contract defenses, such as . . . unconscionability."  *McKee v. AT&T Corp.*, 164 Wash. 2d 372, 396 (2008) (en banc) (internal quotations and citation omitted).  "In Washington, either substantive *or*

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - 12
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

procedural unconscionability is sufficient to void a contract." *Hoober v. Movement Mortg., Inc.*, 382 F. Supp. 3d 1148, 1154 (W.D. Wash. 2019); *see also McKee*, 164 Wash. 2d at 396 (2008) (recognizing a contract is unenforceable if it is either procedurally or substantively unconscionable). Plaintiff can establish neither procedural nor substantively unconscionability here.

### 1.    The Agreement Is Not Procedurally Unconscionable.

Procedural unconscionability focuses on "impropriety during the process of forming a contract" resulting from unequal bargaining power. *Nelson v. McGoldrick*, 127 Wash. 2d 124, 131 (Wash. 1995); *see also Romney v. Franciscan Med. Grp.*, 186 Wash. App. 728, 737 (2015) ("[A]n employee who asserts an arbitration agreement is procedurally unconscionable must show some evidence that the employer refused to respond to her questions or concerns, placed undue pressure on her to sign the agreement without providing her with a reasonable opportunity to consider its terms, and/or that the terms of the agreement were set forth in such a way that an average person would not understand them."); *Hoober*, 382 F. Supp. 3d at 1154 (acknowledging the procedural unconscionability standard outlined in *Nelson v. McGoldrick*). While arbitration agreements may be challenged on such grounds, the Agreement affords no opportunity for such an argument.

As an initial matter, the Agreement is procedurally sound because Plaintiff had the choice to opt out of it. *See McMahon v. Meta Platforms, Inc.*, No. 2:23-cv-00171-RSL, 2023 WL 4546377, at *2, n.1 (W.D. Wash. July 14, 2023) ("[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it . . . .") (quoting *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016)); *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 304 (2004) (the key inquiry is whether the party "lacked meaningful choice"); *Shelton*, 2023 WL 2629027, at *3 (finding the Non-Disclosure and Dispute Resolution Agreement between plaintiff and Walmart procedurally sound since plaintiff had the opportunity to opt out of the arbitration provision). Indeed, agreeing to arbitration is not a required condition for using the Spark Driver platform and

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - 13
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

1   providing services under its terms of use. The Agreement provides that the "[a]rbitration

2   [p]rovision is not a mandatory component of [the] Agreement or Contractor's contractual

3   relationship with Walmart. ***If [the] Contractor does not want to be subject to [the] [a]rbitration***

4   ***[p]rovision, [the] Contractor may opt out*** . . . ." (O'Brien Decl., Ex. A at 17 (emphasis added);

5   *id.*, Ex. B at 15 (emphasis added).) Plaintiff was presented with an opportunity to opt-out and

6   provided with a clearly delineated procedure for doing so—"by notifying Walmart in writing of

7   [his] desire to opt out of [the arbitration provision] . . . within 30 days of [his] execution of [the]

8   Agreement . . . ." (*Id.*, Ex. A at 17; *id.*, Ex. B at 15.) He chose not to do so. (*Id.* ¶ 6.)

9       Moreover, the clear headings contained in the Agreement do not support a procedural

10  unconscionability argument. *See Hoober*, 382 F. Supp. 3d at 1155 (explaining that an arbitration

11  agreement "hidden in a maze of fine print" may be procedurally unconscionable); *Adler v. Fred*

12  *Lind Manor*, 153 Wash. 2d 331, 349–50 (2004) (holding an agreement "clearly labeled

13  'Arbitration Agreement' in boldface type and normal font" with an explicit statement that the

14  signatory "agree[d] that any dispute related to [their] employment relationship [would] be resolved

15  exclusively through binding arbitration" was not an agreement in a maze of fine print). But here,

16  the relevant arbitration provisions are conspicuous and clearly explained. Both the arbitration

17  provision and right to opt out appear in bolded lettering, in separately delineated sections, and

18  explain the operative terms of arbitration and the opportunity to opt out. (*See* O'Brien Decl., Ex.

19  A at 5–18; *id.*, Ex. B at 5–15.)

20      Finally, the Agreement advised Plaintiff that he was "free to seek assistance or advice from

21  an advisor . . . before entering into the Agreement . . . ." (*Id*, Ex. A at 1; *id.*, Ex. B at 1.) Plaintiff

22  apparently never did so. (*See id.* ¶ 6 .) *See Zuver*, 153 Wash. 2d at 304 (explaining that merely

23  claiming unequal bargaining power is not sufficient to show procedural unconscionability; "[a]t

24  minimum, an employee  . . . must show some evidence that the employer refused to respond to her

25  questions or concerns . . . "). When signing the Agreement, Plaintiff also acknowledged "that [he]

26  ***read, understood, and considered*** the consequences of the Agreement." (O'Brien Decl., Ex. A at

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - 14
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

1   17 (emphasis added); *id.*, Ex. B at 17 (emphasis added).)  The Agreement is thus not procedurally

2   unconscionable.

### 2.   The Agreement Is Not Substantively Unconscionable.

4   The arbitration agreement is also not substantively unconscionable.   Substantive

5   unconscionability concerns "overly harsh" or "one-sided" terms.  *Nelson*, 127 Wash. 2d at 131;

6   *see also Sweitzer v. JRK Residential Grp., Inc.*, No. 20-5849 RJB, 2020 WL 6147014, at *3 (W.D.

7   Wash. Oct. 20, 2020) (finding no substantive unconscionability because "[b]oth sides agreed to

8   give up the right to pursue disputes in court" and "Plaintiff [did] not demonstrate that any of the

9   clauses or terms in the Agreement [were] one-sided or overly harsh").   To be substantively

10  unconscionable a contract must be "monstrously harsh," "exceedingly calloused," and so "one-

11  sided as to shock the conscience."  *Adler*, 153 Wash. 2d at 344–45 (quoting *Nelson*, 127 Wash. 2d

12  at 131); *Mohammed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (citations omitted).

13  That standard is not met here.

14  Here, the Agreement provides both sides with the same benefit of quicker, more cost-

15  effective resolutions of any disputes between them.  (*See* O'Brien Decl., Ex. A.; *id.*, Ex. B.)  Thus,

16  there are no "one-sided" arbitration provisions in the Agreement.  The Agreement also imposes no

17  undue hardship on Plaintiff.  There are no limitations of remedies or damages, nor any one-sided

18  limitations on Plaintiff.  Plaintiff may recover any remedies he could individually recover in a

19  court of law, including attorneys' fees and costs, if the law so allows.  (*See id.*, Ex. A at 16–17;

20  *id.*, Ex. B at 14.)  The Agreement is therefore not substantively unconscionable.  *See Zuver*, 153

21  Wash. 2d at 319 (finding the attorney fees provision of the contested arbitration agreement not so

22  "one sided or harsh" as to be substantively unconscionable because the "provision permit[ted]

23  *either* party to recover fees"); *Lowden v. T-Mobile, USA, Inc.*, No. C05-1482P, 2006 WL 1009279,

24  at *6 (W.D. Wash Apr. 13, 2006) (finding an arbitration agreement's minimal limitations on

25  remedies not substantively unconscionable as "the agreement[] require[d] both sides to arbitrate

26  disputes").  And even if the Agreement had some amount of substantive unconscionability (it does

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - 15
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

not), it does not have the high, "monstrously harsh" degree of substantive unconscionability required to decline its enforcement.

## V.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED OR, AT A MINIMUM, STAYED PENDING COMPLETION OF THE ARBITRATION

Under the FAA, courts have "discretion to dismiss . . . suits when, as here, all claims are subject to arbitration." *Forrest v. Spizzirri*, 62 F.4th 1201, 1203 (9th Cir. 2023); *see also Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (finding that the FAA "gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not . . . limit the court's authority to grant a dismissal in th[e] case"); *McMahon v. Meta Platforms, Inc.*, No. 2:23-cv-00171-RSL, 2023 WL 4546377, at *3 (W.D. Wash July 14, 2023) ("Where, as here, all of plaintiff's claims are subject to the arbitration clause, the case will be dismissed without prejudice."); *Randall v. FedEx Ground Package Sys., Inc.*, No. 2:23-cv-0095-TOR, 2023 WL 4632380, *5–6 (E.D. Wash. July 19, 2023) (finding a dismissal was warranted where all claims could be arbitrated as "[n]o resources would be saved if the case were to remain on the docket . . . ."); *Blanchat v. Smash Franchise Partners, LLC*, No. 2:20-cv-0380-TOR, 2020 WL 7364978, at *6 (E.D. Wash. Dec. 15, 2020) (granting a dismissal and reasoning that "dismissal is warranted where all issues will be determined by the arbitrator pursuant to the agreement's broad arbitration provision").  Indeed, this principle extends to cases where a plaintiff is subject to a class action waiver because once "arbitration is resolved, all of [his] individual claims will be resolved," and the plaintiff "will not have standing to proceed with the purported class claims." *Thompson v. La Petite Acad., Inc.*, No. 2:22-cv-04348-AB-JPR, 2023 WL 4317193, at *4 (C.D. Cal. Apr. 28, 2023).  All of the claims in this action fall squarely within the scope of the Agreement, permitting the Court to dismiss Plaintiff's complaint.  *See Bishop v. Boral Indus.*, 2020 U.S. Dist. LEXIS 141171, at *5–6 (S.D. Cal. Aug. 6, 2020) ("[T]he valid arbitration clause applicable to all of Plaintiff's claims renders him unable to amend and possibly win relief, and therefore dismissal *with* prejudice is appropriate on the Court's initiative." (emphasis added)).

DEFENDANTS WALMART INC. AND
ASHLEY HATFIELD'S MOTION TO
COMPEL ARBITRATION - 16
Case No. 3:23-cv-06083-BAT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206.693.7057 | Fax: 206.693.7058

1   Alternatively, should the Court prefer not to proceed with dismissal of this action, the

2   action must at minimum be stayed pending the completion of arbitration. *See* 9 U.S.C. § 3 (a court

3   compelling a matter to arbitration "shall on application of one of the parties stay the trial of the

4   action until such arbitration has been had in accordance with the terms of the agreement. . . .");

5   *Hoober v. Movement Mortg., LLC*, 382 F. Supp. 3d 1148, 1153 (Wash. 2019) ("The FAA requires

6   courts to stay proceedings when an issue before the court can be referred to arbitration.").

7   **VI.    CONCLUSION**

8   For these reasons, Defendants Walmart Inc. and Ashley Hatfield respectfully request that

9   this Court grant their motion to compel Plaintiff's claims to individual arbitration and dismiss

10   Plaintiff's complaint.

11   Respectfully submitted this 4th day of December, 2023.

12   I certify that this memorandum contains     OGLETREE, DEAKINS, NASH, SMOAK
     5,598 words, in compliance with the Local    & STEWART, P.C.
13   Civil Rules.                                 By: */s/ Adam T. Pankratz*
                                                       Adam T. Pankratz, WSBA #50951
14                                                     1201 Third Avenue, Suite 5150
                                                       Seattle, WA  98101
15                                                     Telephone:  (206) 693-7057
                                                       Facsimile:  (206) 693-7058
16                                                     Email:  adam.pankratz@ogletree.com

17                                                 O'MELVENY & MYERS LLP

18                                                 By: */s/ Scott Voelz*
                                                   By: */s/ Allison Bader*
19                                                 By: */s/ Jamie Butts*
                                                       Scott Voelz, CA Bar #181415
20                                                     (admitted *pro hac vice*)
                                                       Allison Bader, CA Bar #324306
21                                                     (admitted *pro hac vice*)
                                                       Jamie Butts, CA Bar #346647
22                                                     (admitted *pro hac vice*)
                                                       400 South Hope Street, 18th Floor
23                                                     Los Angeles, CA  90071
                                                       Telephone:  (213) 430-6000
24                                                     Facsimile:  (213) 430-6407
                                                       Email:    svoelz@omm.com
25                                                               abader@omm.com
                                                               jbutts@omm.com
26                                                 *Attorneys for Defendants Walmart Inc. and*
                                                   *Ashley Hatfield*

1

## CERTIFICATE OF SERVICE

2     I hereby certify that on the 4th day of December, 2023, I served the foregoing

3   DEFENDANTS WALMART INC. AND ASHLEY HATFIELD'S MOTION TO COMPEL

4   ARBITRATION via the method(s) below on the following parties:

5
      James B. Pizl, WSBA #28969
6     Justin Abbasi, WSBA #53582
      ENTENTE LAW PLLC
7     315 Thirty-Ninth Avenue SW, Suite 14
      Puyallup, WA  98373-3690
8     Telephone:  (253) 446-7668
      Email:   jim@ententelaw.com
9              justin@ententelaw.com

10    *Attorneys for Plaintiff Joshua Walz*

11   ☒      by **electronic** means through the Court's Case Management/Electronic Case File system,
            which will send automatic notification of filing to each person listed above.
12

13   ☐      by **mailing** a true and correct copy to the last-known address of each person listed above.
            It was contained in a sealed envelope, with postage paid, addressed as stated above, and
14          deposited with the U.S. Postal Service in Seattle, Washington.

15   ☐      by **e-mailing** a true and correct copy to the last-known email address of each person listed
            above.
16

17          SIGNED THIS 4th day of December, 2023 at Seattle, Washington.

18                                              OGLETREE, DEAKINS, NASH, SMOAK
                                                & STEWART, P.C.
19
                                                By: */s/ Cheryl L. Kelley*
20                                                  Cheryl L. Kelley, Practice Assistant
                                                    cheryl.kelley@ogletree.com
21

22

23

24

25

26